**04MBD 10308**

## AFFIDAVIT

I, Colleen Forgetta, Special Agent with the Department of Homeland Security, Bureau of Immigration and Customs Enforcement (ICE), being duly sworn, hereby depose and state as follows:

1.  I am a Special Agent with ICE, assigned to the Special Agent in Charge (SAC) in Boston, Massachusetts. I have been employed as a Special Agent with ICE, and with its predecessor agency, the United States Customs Service, for approximately 21 years. I am currently assigned to the Asset Investigations Recovery Group (AIRG) for ICE, Boston.  This group supports all criminal investigations being conducted by the SAC/Boston, involving violations, such as 8 U.S.C. §1324 (Bringing In and Harboring Unlawful Aliens) and 18 U.S.C. §1546 (Visa Fraud), that are the basis for the seizure and forfeiture of assets. As part of my training, I have recently attended the Immigration and Customs Special Agent Cross Training Course in Portland, Maine, which involved instruction regarding techniques for investigating and detecting criminal activities relating to federal immigration violations, including those involving document fraud, alien smuggling, and fraudulent visas. During my employment as a Special Agent with Customs and ICE, I have been involved in numerous investigations related to fraudulent importation documents, fraudulent identification documents used to obtain entry into the United States illegally and to illegally obtain employment.  I have

also been involved in investigations involving aliens gaining or attempting to gain unlawful entry into the United States by means of fraudulent documents. One of my current responsibilities is investigating cases related to alien smuggling or immigration fraud where civilly or criminally forfeitable assets are involved. My duties include identifying assets and screening and processing seizures and forfeiture actions involving criminal, civil, and administrative forfeiture.

2. I am familiar with all aspects of this investigation, through my personal participation in the investigation, as well as though reading reports and documents related to this case, and through discussions with other law enforcement officers involved in the investigation. The information set forth in this affidavit is based on my own participation in the investigation, as well as on my review of ICE records and reports, as well as information provided by other law enforcement officials. This affidavit does not contain every fact that I have learned during the course of this investigation, but instead has included only those facts which support the accompanying application for a pre-indictment temporary restraining order for the following real property:

> 80 Walnut Street, Unit 401, Canton Massachusetts 02021, more specifically described in the deed recorded on September 25, 2000, in the Norfolk County registry of

deeds, book 14423, page 104 ("the Walnut Street Condo")

3.    The Walnut Street Condo is owned by Mohammed Abdul Aziz Quraishi a/k/a Quaraishi (Aziz) who is one of three brothers currently under criminal investigation for their activities in connection with their businesses Megasystems, Inc. ("Megasystems") and MAQ Technologies, Inc. ("MAQ Technologies" or "MAQ"). The other two brothers are: Mohammed Abul Rasheed Quraishi (Rasheed) and Mohammed Abdul Qayium Quraishi (Qayium). The United States anticipates that a federal criminal indictment will be returned in the near future, in part, charging Qayium and Aziz with encouraging or inducing an alien to come to, enter, or reside in the United States in violation of 18 U.S.C. §1324(a)(1)(A)(iv). The indictment is also expected to include a Forfeiture allegation, alleging that, in the event of Aziz's conviction for harboring aliens in violation of law, that the Walnut Street Condo would be subject to criminal forfeiture pursuant to 18 U.S.C. §982(a)(6)(A)(ii)(II), as property, real or personal, "that is used to facilitate, or is intended to be used to facilitate the commission of an offense [pursuant to 8 U.S.C. §1324(a)]." As detailed below, there is probable cause to believe the Walnut Street Condo, the property the United States seeks to restrain would, upon conviction, be subject to forfeiture; and that prior notice to Aziz, the

3

owner of the property, would jeopardize the availability of the property for forfeiture.

4.   On June 25, 2004, as part of this investigation, a federal search warrant was executed at Megasystems. During the course of the search, federal agents discovered a condominium purchase and sales agreement dated August 29, 2000, for the purchase of 80 Walnut Street, Unit 401, Canton, Massachusetts. This document indicated that the purchaser of the property was Megasystems, Inc. The purchase and sale agreement was signed by Rasheed Quraishi.

5.   The deed for the Walnut Street Condo, dated September 25, 2000, indicated that the purchaser of the Walnut Street Condo was Aziz Quraishi for a price of $115,000. A mortgage of $92,000 was held by Fleet Mortgage Corporation, who apparently at some point transferred the mortgage to Washington Mutual Bank. The mortgage was discharged on February 4, 2003. The recipient of the discharge was Aziz Quraishi.

*Statutory and Regulatory Background: United States H-1B Visa Program*

6.   The Immigration and Nationality Act ("INA") allows employers to sponsor the admission of an alien into the United States to perform services in a specialty occupation. Under 8 U.S.C. §1153(b)(3)(A), the H-1B visa program, an alien seeking to

4

come to the United States to work may obtain a non-immigrant visa in order to perform skilled labor in the United States. The visa is valid for three years, with the option of an additional three-year extension. An alien already lawfully admitted in the United States pursuant to an H-1B visa may apply for an extension for one year if he or she changes employers. Such visas may not be granted, however, unless the Secretary of Labor certifies that the employer has a valid employment opportunity that he or she is attempting to fill ("the Labor Certification.")

7.      Pursuant to 20 C.F.R. §656.21, the Labor Certification may be obtained by filing a Department of Labor ("DOL") Labor Certification Application for alien employment certification, officially known as a form ETA 9035. The application must be completed and signed by the prospective employer. In the application, the employer attests that the employer has a specific job to fill, describing the nature, location, wages, and requirements of the job.

8.      Once DOL approves the application and issues a Labor Certification, the approved application is returned to the employer, who then files Form I-129, a non-immigrant visa application, with the Department of Homeland Security Bureau of Citizenship and Immigration Services. Signed under the pains and penalties of perjury, the employer identifies the

particular alien that the employer wants to hire to fill the job identified in the Labor Certification, as well as the nature and requirements of the job and wages to be paid. The DOL certification is attached to Form I-129. If approved, ICE issues Form I-797, Notice of Action, to the State Department indicating its concurrence with DOL.

9.   If the alien resides outside the United States, he/she is required to file Department of State Form-156 with the American Embassy or Consulate. A subsequent in-person interview is conducted to determine whether the individual is qualified for the prospective job. If she or he is qualified, the Department of State approves and issues a visa to permit the alien to come to the United States and accept the job identified in the Labor Certification. If the alien is already lawfully in the country pursuant to an H-1B visa and is changing jobs, then the application is sent to the Department of State for approval without an in-person interview.

10.  The INA requires each sponsoring employer to be liable and responsible for the nonimmigrant authorized work based upon an H-1B visa. Each H-1B applicant is required to maintain an active employment status with the petitioning company, or to obtain the approval of the Department of Labor and the Bureau of Citizenship and Immigration Services to change jobs. An

alien-employee who fails to maintain that employment status falls out of status and is subject to removal proceedings. In addition, the sponsor company is responsible for the continued employment and salary of the sponsored alien. If the alien has a change of status (by leaving the job) or changes occur in his/her employment, the sponsoring employer is required to notify DHS.

*Overview of Megasystems Inc., MAQ Technologies and their Officers*

11.   Megasystems, Inc. (hereafter "Megasystems") is a Massachusetts-based corporation that was established in November 1997. Megasystems advertises itself as a "specialty services firm providing complete software solutions to its clients" whose goal is to be "universally recognized as providing technical specialty services." The Chief Executive Officer is listed as Abdul Aziz Quraishi, the record owner of the Walnut Street Condo.

12.   Another corporate entity that is related to Megasystems is MAQ Technologies, Inc. (hereafter "MAQ Technologies"), previously headquartered at 504 Sherman Street, Canton, Massachusetts and currently located at 953 N. Plum Grove, Schaumburg, Illinois. Both Megasystems and MAQ Technologies claim to have an office at 953 N. Plum Grove Road, Schaumburg, Illinois. The

President of MAQ Technologies is Mohammed Quraishi,[1] also
known as Rasheed Quraishi and Mohammed AR Quraishi.    MAQ
Technologies describes itself as a "professional services firm
that delivers IT Solutions through consulting, outsourcing and
strategic staffing."    In addition to claiming the same
Illinois office and to provide the same services, both
Megasystems and MAQ Technologies share an office location and
phone number, and the officers of both companies appear on the
other's payroll statement and both have provided almost
identical employment letters in the H-1B visa applications
submitted to the United States.

## The H-1B Application of CI-1

13.    In June 2004, law enforcement agents interviewed a Cooperating
Individual ("CI-1"). In the interview, CI-1, who is an alien,
said that he/she paid a conduit a large sum of money to
facilitate his/her fraudulent admission to the United States
pursuant to a H-1B visa.    In summary, CI-1 said that MAQ

---

[1] On December 17, 1998, the Anti-Fraud Unit, Consulate General
of the United States, concluded that Mohammed Quraishi's own H-1B
visa application, sponsored by Megasystems, had been obtained
through fraud.    The Immigration and Naturalization Service
subsequently revoked Quraishi's visa on August 3, 1999, but
Quraishi is believed to still be in the country and actively
involved in the operations of both Megasystems and MAQ
Technologies.

Technologies falsely represented to the United States that the company would employ CI-1. Based on this false representation, an H-1B visa was issued to CI-1. He/she entered the United States with this H-1B visa. However, CI-1 has never been employed by MAQ Technologies.

14. On November 27, 2000, MAQ Technologies electronically filed an ETA 9035 on behalf of CI-1. The Labor Conditional Application was for a H-1B specialty occupation computer programmer position for a salary of $40,000.00 to $45,000.00. The application was signed by David J. Francis, Vice President of Human Resources, MAQ Technologies, Canton, Massachusetts. The application was approved by the Department of Labor on December 1, 2000.

15. CI-1's immigration visa petition file includes supporting documentation and letters attesting to CI-1's experience, submitted by the president of MAQ Technologies, President Rashid Quraishi, and dated February 28, 2000. The petition states that CI-1 would be employed as a computer programmer /analyst and would earn a salary of $45,000 a year. The petition was signed by the Vice President for Human Resources David J. Francis, and dated November 15, 2000. On March 12, 2001 INS approved the I-129 petition for a visa based upon documentation submitted by representatives at MAQ

Technologies, including the DOL ETA 9035 certification.  The visa was valid through January 15, 2004.

16.  On May 14, 2001, the Department of State issued CI-1 a United States H-1B Non-immigrant Visa, Control Number; 20001279790001.  The visa was issued at Chennai, India and was valid until January 15, 2004.  The visa contains petition number 05551007 and reflects MAQ Technologies as the sponsoring company.  DHS indices confirm that the visa was used by CW-1 to enter the United Sates on June 10, 2001 at or near New York.

17.  When CI-1 arrived in the United States on June 10, 2001, he/she was informed by Rasheed Quraishi that there was no computer job available for CW-1 at MAQ/Megasystems.  According to CI-1, Rasheed informed CI-1 that MAQ/Megasystemes had a condominium available in Canton (the Walnut Street Condo) where CI-1 could stay and pay rent to Aziz Quraishi.  Rasheed instructed CI-1 to stay in the Walnut Street Condo and try to find work by himself/herself.  Except for a short visit to Virginia to visit friends sometime during 2001 or 2002, CI-1 lived in the Walnut Street Condo from July 2001 until Ocotber 8, 2004.

18.  During the time that CI-1 was living in the Walnut Street Condo, Rasheed engaged CI-1 in a fraudulent employment pay stub/pay back scheme.  As part of this scheme, Rasheed

provided CI-1 with a fraudulent employment pay stubs and
checks giving the appearance that CI-1 was a full-time employee
of MAQ/Megasystems.  CW-1 was then required to pay back the
listed wage amount to MAQ/Megasystems.  Additionally, Rasheed
required CI-1 to pay the employment taxes that MAQ/Megasystems
had to pay the United States government to further facilitate
the fraud.

19.  In July 2004, CI-1 provided law enforcement officers with
several fraudulent pay stubs reflecting that he/she worked for
MAQ Technologies in Schaumburg, Illinois as a computer
programmer from June 30, 2003 to December 4, 2003.  Despite
the information reflected on these fraudulent pay stubs, CI-1
stated that he/she never worked for MAQ technologies or
Megasystems and had never lived or worked in Illinois.  In
fact, during the time period reflected by the pay stubs, CI-1
had been living in the Walnut Street Condo and had worked as
a clerk at a convenience store in Massachusetts.  CI-1
informed law enforcement that the false employment stubs and
checks were mailed to him/her from Rasheed who lived in
Illinois and that CI-1 was instructed by Rasheed to deposit
them into his/her personal account then pay back the full
amount by personal check to Rasheed.  CI-1 further informed me
that he/she then paid an additional fee to Rasheed to cover
the taxes and insurance, on top of the base salary for the
fraudulent pay stubs.

11

20.  CI-1 indicated that he/she received the payment instructions from Rasheed Quraishi regarding to whom the personal checks should be made payable.  CI-1 supplied an electronic message dated July 13, 2003 sent to CI-1 by Rasheed Quraishi containing this instruction.  The e-mail was entitled "info" and the text stated, in its entirety:

> Check Name: Mohammed A Quaraishi,
>
> Thanks

21.  The signature block of the e-mail read:

> Rasheed Quaraishi
> MAQ Technologies Inc.
> 953 N. Plum Grove RD, Sutie #D
> Schaumburg, IL 60173
> Ph: 847-619-5009
> Fax: 847-619-5166
> Cell: 781-367-0628
> Email : rasheed@maqtechnologies.com
> Website:www.maqtechnolgies.com

22.  Records for Charter One Bank, Albany New York, Bank Account Number 862008235, Bank Customer Name: MAQ Technologies/ Mohammed A.R. Quaraishi reflect that, from on or about June 30, 2003 through December 4, 2003 a total of seven company checks from MAQ Technologies where made payable to CI-1 for a total amount of $15,875.34.

23.  CI-1's bank records indicate that CI-1 wrote seventeen (17) personal checks starting on or around July 23, 2003 through December 29, 2003, totaling $20,496.65 to "Mohammed A. Quaraishi."  The additional money paid reflects the taxes and

insurance CI-1 was required to pay the company on top of his/her purported salary. All the personal checks that had legible endorsements were signed by Rasheed Quaraishi. All of these checks were then deposited into individual bank account number 8620398000, bank customer name: Mohammed A.R. Quraishi. The name and signature of Rasheed Quraishi appears on the Bank Deposit Agreement and appears to be similiar to the endorsements on the checks.

24. In addition, during the time that CI-1 was involved in this fraudulent employment scheme, CI-1 was required to pay $240 monthly as rent for his residence at the Walnut Street Condo. CI-1 made these rent payments to Aziz Quraishi, who was the record owner of the Walnut Street Condo and the CEO of Megasystems. CI-1 has provided three cancelled checks made payable to Aziz Quraishi and one to Abdul Aziz (which is an alias of Aziz Quraishi, each in the amount of $240. All of the checks were negotiated. Two of the checks are endorsed by Aziz Quraishi, while the other check is endorsed by Qaiym Quraishi.

25. Furthermore, a review of DOL indices indicate that MAQ Technologies submitted information indicating that CI-1 has been employed at MAQ Technologies in Massachusetts beginning in 2003. MAQ reported that CI-1 was paid $9000 in the second quarter of 2003; $9000 in the third quarter; $6000 in the fourth quarter; and $9750 in the first quarter of 2004.

*Identity Theft of David J. Francis*

26.    In early July 2004, law enforcement agents were informed by CI-1 that David J. Francis, the person purporting to be the Vice-President of Human Resources on CI-1's visa application, did not work at MAQ/Megasystems.  Nonetheless, CI-1 noted that the Quraishi  brothers had utilized the name "David J. Francis" on several other H-1B visa applications for MAQ/Megasystems.  CI-1 informed law enforcement that David J. Francis was a legitimate businessman who owned and operated David's Tire and Auto, Inc. located at 898 Turnpike Street, Canton, Massachusetts.  CI-1 stated that Aziz and Qaiyum, and the other aliens living at the Walnut Street Condo  took their personal vehicles to David's Tire and Auto for routine automotive repairs and maintenance.

27.    On August 18, 2004, ICE Special Agent Richard M. Deasy and FBI Special Agent Lisa Cline interviewed David J. Francis at his place of business in regards to the fraudulent visa applications filed utilizing his name.  Francis acknowledged knowing all three of the Quraishi brothers and recognized photographs of Aziz and Qaiyum.  Francis stated that he had a normal customer business relationship with Aziz and Qaiyum and routinely did business with them for approximately the past five years.  Francis said he knew nothing about visas issued using his name as a corporate officer by Megasystems or MAQ